## Case No. 3,232.

### In re CORLIES.

[1 Betts, C. C. MS. 10.]

Circuit Court, S. D. New York. April Term, 1841.

BAIL—FORFEITURE OF RECOGNIZANCES—SUMMARY JURISDICTION — OFFICERS — MARSHAL— NOMINAL SURETY—EQUITY.

[1. Money paid to a marshal in satisfaction of forfeited recognizances, upon mere notice of forfeiture, and without process or coercion, is a part of the fund for the payment of jurors and witnesses, and is received by the marshal as an agent of the treasury department. It can be recovered from him by an action at law if wrongfully paid, but is not within the custody or summary jurisdiction of the court.]

[2. Where a person accused of crime furnishes money to a nominal surety to indemnify him for giving bail, and thereafter flees the country, any claim by the nominal surety to have the money paid by him on the forfeited recognizances refunded is without sufficient equity to warrant the exercise of the court's summary jurisdiction to that end.]

[In the matter of Joseph W. Corlies' bail for James Bottomly, Jr. Heard on motion to vacate an order forfeiting the recognizances, to have the recognizances delivered up and cancelled, and to compel Mr. Waddell, ex marshal, to refund the amount of the recognizances.]

BETTS, District Judge. A motion was made in this case at the close of the last November term, and was argued by the counsel for the applicant and by the U. S. attorney on behalf of the U. S., and by counsel for the late marshal. The judges having no opportunity to confer upon the case, it was necessarily laid over to the present term. The motion is founded upon an affidavit and notice, and seeks to have vacated two orders of the court entered the 6th of August, 1838, forfeiting two several recognizances before that entered into by the applicant, and to have the two recognizances delivered up and cancelled; and also that the late marshal, Mr. Waddell, repay $4,000, the amount of said recognizances paid him by the applicant on the 10th of August, 1838. The notice also indicates that such other relief will be asked for as the nature of the case may require.

On the 23rd day of April, 1838, James Bottomly, Jr., was arrested on two warrants, —one on a charge of perjury, and the other of bribery, committed in entering goods at the custom house of this port. He was brought before a police magistrate, and the examination at his instance was deferred until the next day, and the magistrate signed his commitment on the charges, for examination. The prisoner was then brought to the marshal's office, and, at his instance and by mutual assent of the district attorney and the counsel for the prisoner (the applicant Corlies being also present), it was arranged that the prisoner should give bail to appear before the district judge the next morning, and the two recognizances in ques-

tion were therefore executed before L. Rapelje, U. S. commissioner, &c., and the prisoner was discharged. He immediately fled the country. The next day, Corlies requested the deputy marshal to have no costs made on the recognizances, as he would pay the money on notice to him that it must be paid. He also declined the offer of the marshal to be supplied with officers and assistants to pursue and apprehend the prisoner. The collector deposes that he was informed and believes Corlies was indemnified for becoming bail. On the day the deputy marshal informed Corlies that the recognizances had been forfeited, he paid to him the money in question. No process was taken out; no demand was made upon him; and no coercion or threat employed. The applicant has never brought his action in a state court against the late marshal to recover back the money.

We do not deem it necessary to decide or discuss the various points brought forward on the argument, respecting the regularity of the proceedings in taking or forfeiting the recognizances, or whether the applicant has lost his right to relief on motion, from his long laches. It appears to us there are two insuperable objections to any order being now given by the court, touching the disposition of the money: First, that the marshal is out of office, and is not holding the money under any process or authority of the court. To certain purposes a marshal may remain an officer of the court, and be subject to its authority, at least whilst he is yet acting under or executing its process, although his term of office has expired; but we are not aware of any principle which subjects him to the summary jurisdiction of this court, after his commission has terminated, for his official acts not connected with the execution or return of process. But, second, we had occasion to observe soon after this money was paid the marshal, on deciding a motion or petition in behalf of the marshal that he had the instructions or directions of the court whether to pay it over to the collector or to the United States, that the money, after it was collected, in no way came under the authority of the court. It is not to be paid into court, nor is the marshal a depository, subject to the orders and control of the court in respect to such monies.

By the act of March 3, 1791, congress appropriated a sum arising from fines and forfeitures to the United States, and equal to the amount thereof, for the payment of jurors' and witnesses' fees, &c. 2 [Bior. & D.] Laws, 226, § 1 [1 Stat. 216]. The act containing this appropriation clause was repealed May 8, 1792. 2 [Bior. & D.] Laws, 302, § 8 [1 Stat. 278]. But the clause itself is recognized as in force by every appropriation bill passed since that period,—the appropriation to those objects being invariably "in aid of the fund arising from fines, penalties and forfeitures," &c. Act March 3, 1841 [5

Stat. 427]. The practice in this court has always been in conformity to that allotment of such monies; the proceeds of all fines and penalties being paid directly to the marshal, except in cases of forfeitures on seizures under the revenue laws, or others, which are collected by means of the process of the court. In such cases the money comes first into the court, and is thereafter paid out to the collector. &c., and doubtless whilst the marshal holds the process or the money made by it he may be amenable to the court in respect to such collection to the same degree as in other suits pending. But often in the one case the money goes into the hands of the collector, and in the other to those of the marshal, to be disbursed pursuant to the provisions of law or to be accounted for with the treasury department, and the matter no longer belongs to the cognizance of the court.

We think the principle applies directly to the present motion. This money must necessarily enter into the accounts of the late marshal with the treasury department, as a disbursing agent of that department, and not as an officer of the court. It was never deposited in court, or placed with the marshal by its order or authority. The marshal is by statute to pay the contingent expenses of the court, including jurors' and witnesses' fees and those of the district attorney and clerk in criminal cases. Yet, although the fees accrue from services rendered in court, in aid or execution of its powers and functions, the court will never exercise a summary jurisdiction over the marshal to enforce such payments, for the plain reason that the money is not committed to him by the court or obtained by him through its process or powers.

We do not say the court would not interfere in respect to this money had it been made by execution or the forfeiture of the recognizances or had it been collected by other coercion from the bail by the marshal colore officii; but the facts of this case do not bring it within the reason or equity of such jurisdiction admitting the court might rightfully exercise it. Again, it is palpable, upon the depositions before us, that this was the money of the criminal, and not of the bail, and all the concomitant circumstances render the transaction equivalent to a deposit of the money by the accused with the marshal as a pledge for his appearance. This was a favor accorded him at his urgent instance, and with the assent of his counsel and the district attorney. There can be no ground, therefore, to impute or surmise extortion or oppression by the officer in the act. When the accused instantly availed himself of the indulgence to abscond from justice and flee the country, there is wanting every ingredient of conscience and equity in the demand of his nominal surety to have the pledge refunded him; and it is only in cases of urgent and impressive equity that the

summary relief now invoked will be granted a party. If he has relief at law, that resource is open to him, and we shall leave him to the action he has instituted, without intimating any opinion upon the legal validity of the proceedings under which the money came into the marshal's hands. The court in which the action is pending is the proper tribunal to which those points should be submitted. Motion denied, with costs.